# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BRIK ENTERPRISES, INCORPORATED, D/B/A CULVER'S OF CLARKSTON, DAVISON HOSPITALITY, INC., D/B/A CULVER'S OF DAVISON, FENTON HOSPITALITY INC., D/B/A CULVER'S OF FENTON, GB HOSPITALITY, INC., D/B/A CULVER'S OF GRAND BLANC, BLUE WATER HOSPITALITY, INC.,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT AND JURY DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex (transgender status) and retaliation, and to provide appropriate relief to Charging Party Asher Lucas, Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson. As alleged with greater particularity below, the Equal

Employment Opportunity Commission (the "Commission" or the "EEOC") alleges that Brik Enterprises, Incorporated, d/b/a Culver's of Clarkston, Davison Hospitality, Inc., d/b/a Culver's of Davison, Fenton Hospitality Inc., d/b/a Culver's of Fenton, GB Hospitality, Inc., d/b/a Culver's of Grand Blanc, and Blue Water Hospitality, Inc. (collectively "Defendants" or "Culver's") violated Title VII by subjecting Asher Lucas to a hostile work environment because of his transgender status. Defendants also violated Title VII by retaliating against Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson for opposing and complaining of the sex harassment.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Brik Enterprises, Incorporated, d/b/a Culver's of Clarkston, has continuously been doing business in the State of Michigan and the city of Clarkston, Michigan, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Brik Enterprises, Incorporated, d/b/a Culver's of Clarkston, has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

6. At all relevant times, Defendant Davison Hospitality, Inc., d/b/a Culver's of Davison, has continuously been doing business in the

State of Michigan and the city of Davison, Michigan, and has continuously had at least 15 employees.

7. At all relevant times, Defendant Davison Hospitality, Inc., d/b/a Culver's of Davison, has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

8. At all relevant times, Defendant Fenton Hospitality, Inc., d/b/a Culver's of Fenton, has continuously been doing business in the State of Michigan and the city of Fenton, Michigan, and has continuously had at least 15 employees.

9. At all relevant times, Defendant Fenton Hospitality, Inc., d/b/a Culver's of Fenton, has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

10. At all relevant times, Defendant GB Hospitality, Inc., d/b/a Culver's of Grand Blanc, has continuously been doing business in the State of Michigan and the city of Grand Blanc, Michigan, and has continuously had at least 15 employees.

4

11. At all relevant times, Defendant GB Hospitality, Inc., d/b/a Culver's of Grand Blanc, has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

12. At all relevant times, Defendant Blue Water Hospitality, Inc., has continuously been doing business in the State of Michigan, and has continuously had at least 15 employees.

13. At all relevant times, Defendant Blue Water Hospitality, Inc., has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

14. At all relevant times, Defendants have operated a single employer or integrated enterprise by virtue of their common management, common ownership, interrelation of operations, and centralized control of labor relations. For example:

   a. Kathryn Schmitt and Kevin Powers own and operate Defendants' Culver's restaurants in Clarkston, Davison, Fenton, Fort Gratiot, Grand Blanc, and Waterford, Michigan.

b. Kathryn Schmitt and Kevin Powers are Defendants' sole corporate officers and directors.

c. Kevin Powers is the operations managers for Defendants' Culver's restaurants in Clarkston, Davison, Fenton, Fort Gratiot, Grand Blanc, and Waterford, Michigan.

d. Defendants use the same human resources and payroll company for Defendants' Culver's restaurants in Clarkston, Davison, Fenton, Fort Gratiot, Grand Blanc, and Waterford, Michigan.

e. Employees are eligible to transfer from one of Defendants' Culver's restaurants in Michigan to another.

f. General managers may and do require employees to work at any of Defendants' Culver's restaurants in Michigan depending on the staff needs in each location.

g. Defendants' General Managers worked at several of Defendants' Culver's restaurants in Michigan at a given time.

h. Each of Defendants' Culver's restaurants in Michigan employs approximately 45 employees.

## ADMINISTRATIVE PROCEDURES

15. More than thirty (30) days prior to the institution of this lawsuit, Asher Lucas filed a charge with the Commission alleging violations of Title VII by Culver's.

16. On or about May 8, 2024, the Commission issued to Culver's a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Culver's to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

17. The Commission engaged in communications with Culver's to provide Culver's the opportunity to remedy the discriminatory practices described in the Letter of Determination.

18. On September 4, 2024, the Commission issued to Culver's a Notice of Failure of Conciliation advising Culver's that the Commission was unable to secure from Culver's a conciliation agreement acceptable to the Commission.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

20. Between July and November 2021, Defendants engaged in unlawful employment practices at their Clarkston, Michigan Culver's restaurant (hereinafter "Culver's Clarkston") in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by allowing co-workers to harass Asher Lucas because he is transgender and retaliating against those who opposed the harassment.

    a. Asher Lucas is a transgender man who uses male pronouns, he/him.

    b. Lucas began working for Defendants' Culver's Clarkston in May 2021.

    c. Defendants' general manager (the "GM") was aware that Lucas was transgender.

    d. In July 2021, the GM hired two female employees who worked with Lucas at Culver's Clarkston.

    e. From July 2021 until November 10, 2021, one of Defendants' female employees frequently and purposely

8

      misgendered Lucas, referring to him as she/her whenever they worked together.

f. Lucas objected to and corrected the female employee's misgendering him and complained to managers at Culver's Clarkston, but the female employee continued to use she/her pronouns to refer to Lucas.

g. The female employee's misgendering of Lucas was witnessed by several of Lucas's co-workers, including Jasper Sampson and Savannah Nurme-Robinson.

h. Sampson heard the female employee make remarks about Lucas's body, including a remark asking whether Lucas had reassignment surgery.

i. Nurme-Robinson heard the female employee make anti-transgender comments regarding Lucas, including comments that Lucas was "born a girl and needed to be a girl" and that Lucas should not work at Culver's because he wanted to be a guy.

j. Nurme-Robinson complained to Defendants' GM about the female employee's anti-transgender comments and misgendering of Lucas.

k. Defendants' GM told Nurme-Robinson he would take care of it, but Nurme-Robinson witnessed the female employee continue to purposely misgender Lucas.

l. On or about October 29, 2021, the same female employee made anti-lesbian comments to a lesbian co-worker, including telling the lesbian co-worker that "God was judging her" and that she "was going to hell" for being lesbian.

m. That same day, the lesbian employee reported the female employee's harassment to Defendants' GM.

n. Defendants placed a verbal warning in the female employee's personnel file regarding her October 29, 2021, anti-lesbian comments but allowed her to continue working at the Clarkston location.

o. After October 29, 2021, the female employee continued to intentionally misgender Lucas.

10

p. Lucas was upset by the frequent misgendering and continued to oppose and correct the female employee's intentional misgendering.

q. On or about the last week of October or first week of November 2021, the female employee informed her daughter (the "second employee"), who was also employed at Culvers' Clarkston, that Lucas was transgender.

r. Soon after, the second employee began misgendering Lucas using the pronouns she/her to address him.

s. Lucas objected to the second employee's conduct and corrected her misgendering, but the second employee continued to purposely misgender Lucas.

t. The first employee also sought out Lucas's birth name and obtained it either from Lucas's grandparents or Defendants' records.

u. The first employee shared Lucas's birth name with Culver's Clarkston employees without Lucas's consent, which led to certain employees calling Lucas by his birth name.

v. On November 10, 2021, shift manager Regina Zavinski was working at Culver's Clarkston with Lucas, the female employee, Sampson, and Nurme-Robinson.

w. On November 10, the female employee told Zavinski that Lucas "was really a girl" and that she had spoken to Lucas's grandparents and learned Lucas's "real name."

x. Zavinski objected to the female employee's comments about Lucas and was concerned that the female employee had obtained and was sharing Lucas's birth name without his consent. Zavinski told the female employee that she would report her conduct to Defendants' GM.

y. On November 10, during her shift, Zavinski reported the female employee's anti-trans comments and conduct to Defendants' GM and he responded he had spoken to the female employee before.

z. During the November 10 evening shift, Lucas, Zavinski, Sampson, and Nurme-Robinson met in the Culver's Clarkston office to discuss the female employee's

harassment of Lucas and Defendants' lack of meaningful response.

aa. On November 10, Lucas contacted Defendants' GM and reported the female employee's harassment and the fear he experienced because the female employee had obtained his birth name and was sharing it without his consent or approval. Lucas also informed Defendants' GM that another female employee had also been misgendering him.

bb. On November 10, Sampson contacted Defendants' GM and complained of the female employee's comments and harassment of Lucas.

cc. On November 10, after her shift ended, Zavinski contacted Defendants' GM suggesting that the female employee be fired due to the severity of her actions and that she would not feel comfortable returning to work until then.

dd. Defendants' GM responded to Zavinski that the female employee "has been warned before this situation," and, "I

13

      also am fully capable of handling this situation properly and have done so before and accept your resignation."

ee.    Zavinski was shocked that Defendants' GM had fired her for complaining about the female employee's harassment of Lucas.

ff.    On November 11, Defendants' GM, in consultation with Defendants' owner Kathryn Schmitt, fired Lucas for opposing and complaining of the female employee's harassment.

gg.    On November 11, Defendants' GM, in consultation with Defendants' owner Kathryn Schmitt, fired Sampson for opposing and complaining about the female employee harassing Lucas.

hh.    On November 11, Defendants' GM, in consultation with Defendants' owner Kathryn Schmitt, fired Savannah Nurme-Robinson for opposing and complaining of the female employee harassing Lucas.

21. The unlawful employment practices complained of in paragraph 20 were intentional and comprised of severe or pervasive hostile work environment based on sex (transgender status).

22. The effect of the practices described in paragraph 20 were to deprive Lucas of equal employment opportunities and otherwise adversely affect his status as an employee, because of his sex and transgender status under Title VII.

23. The effect of Defendants' firing Lucas, Sampson, Zavinski, and Nurme-Robinson the day after they opposed and complained of the harassment and practices in paragraph 20 were to retaliate against them for engaging in protected activity, in violation of Title VII.

24. 23. The effect of Defendants' firing Lucas, Sampson, Zavinski, and Nurme-Robinson the day after they opposed and complained of the harassment and practices in paragraph 20 were to dissuade Defendants' employees from complaining of harassment based on sexual identity or transgender status, in violation of Title VII.

25. The unlawful employment practices complained of in paragraph 20 above were done with reckless indifference to the

15

federally protected rights of Lucas, Sampson, Zavinski, and Nurme-Robinson.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a hostile work environment on the basis of sex, including sexual orientation, identity, or transgender status.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees irrespective of their sexual orientation, identity, or transgender status, provide a workplace free of sex-based harassment, and eradicate the effects of its past and present unlawful employment practices.

C. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against employees

16

who complain about sex harassment, including harassment based on sexual orientation, identity, or transgender status.

D. Order Defendants to institute and carry out policies, practices, and programs which ensure employees who engage in protected activity are protected from retaliation.

E. Order Defendants to make whole Asher Lucas, Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F. Order Defendants to make whole Asher Lucas, Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above.

G. Order Defendants to make whole Asher Lucas, Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including emotional pain, suffering,

loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H. Order Defendants to pay Asher Lucas, Jasper Sampson, Regina Zavinski, and Savannah Nurme-Robinson punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

        KARLA GILBRIDE
        General Counsel

        CHRISTOPHER LAGE
        Deputy General Counsel

        KENNETH L. BIRD
        Regional Attorney

        OMAR WEAVER
        Assistant Regional Attorney

*/s/ Diana Marin*
Diana E. Marin (P81514)
Trial Attorney
DETROIT FIELD OFFICE
477 Michigan Ave, Room 865
Detroit, Michigan 48226
(313) 774-0057
diana.marin@eeoc.gov

Dated: October 25, 2024